IDA L. STALLINGS, JOINED BY HER HUSBAND, OSCAR N. STALLINGS, *Plaintiff in Error*, v. CITY OF TAMPA, A MUNICIPAL CORPORATION, *Defendant in Error*.

Opinion Filed December 15, 1919.

Petition for rehearing denied February 16, 1920.

1. The failure of a municipality to keep its streets in "proper condition" as required by its charter may result from a defective condition of a street itself or may be due to an obstruction upon such street, so that, the duty of a city to keep its streets "in proper condition" may be breached either by allowing a street itself to become in a defective condition or by allowing obstructions to be placed on and be permitted to remain upon such street.

2. The Charter of the City of Tampa contains the following provision (Section 59, Chap. 5363, Acts of 1903) : "No suit shall be maintained against the city for damages arising out of a failure to keep in proper condition any sidewalk, pavement, viaduct, bridge, street or other public place, unless it shall be made to appear that the damage alleged is attributable to the negligence of the city, and that written notice of such damage was, within thirty days after the receiving of the injury alleged, given to the city attorney with such reasonable specifications as to time and place and witnesses as would enable the city officials to investigate the matter." Held that in action against the city, such as is described in this statute, it is incumbent upon the plaintiff to allege and prove that the notice therein required to be given was duly given before he will be entitled to recover.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*N. B. K. Pettingill* and *Howard Macfarlane*, for Plaintiff in Error;

*John P. Wall*, for Defendant in Error.

WEST, J.—Plaintiff in error, joined by her husband, sued the defendant, a municipal corporation, because of an alleged injury received by her which, according to the allegations of the declaration, occurred upon the streets of the defendant city.

It is alleged that such streets are under the full dominion and control of the city; that at the southwest corner of Plant avenue, which avenue runs north and south, and Grand Central avenue, which aveue runs east and west, the two streets crossing each other, "from the curbing at the margin of the paved portion of each of said streets there ran sidewalks from said curbing westerly on the south side of Grand Central avenue and southwardly along the west side of Plant avenue, which sidewalks were of cement, about four feet wide, and intersected at a point about eight feet from said corner; and that from the intersection of said sidewalks and between said sidewalk and said street curbing on Grand Central avenue a grass plat extended about six feet in width, within which the defendant city had allowed to be planted certain shrubs or trees; that from a peg which the city had allowed to be driven at the northwest corner of the intersection of the sidewalks at the point aforesaid the owner of the lot abutting upon said streets at said intersection, or some other person to plaintiff unknown, had caused to be stretched a strong iron wire to a palmetto tree in the middle of said grass plat and some eight or ten feet from said peg or stake, said wire

at said stake being about two inches above the level of said sidewalk and said grass plat and being at its other end attached to said palmetto tree at a height of about two feet above said grass plat; that said wire had existed and remained in said position for a long period of time, to-wit: for a period of one year or more; and that the defendant city, through its proper officers, knew or by the exercise of reasonable diligence should have known of the existence and position of said wire and that it constituted a dangerous and invisible obstruction in the night time to persons lawfully proceeding with due care along said street or streets, and who might in so proceeding cross said grass plat, which constituted a part of said street and was, so far as would appear in the night time, open and safe for the use of persons desiring to cross it; and that presence of such obstruction in said public street in the condition in which it was and had remained rendered such public street unsafe for public use;" that after nightfall, between the hours of eight and nine o'clock p. m., plaintiff in error was walking upon Plant avenue in a southerly direction toward Grand Central avenue; that she crossed the paved portion of Grand Central avenue, and, seeing no obstruction and believing that the defendant city kept and maintained said public street and all parts thereof free from obstruction, proceeded to cross the corner of said grass plat and in doing so tripped and fell over said wire so stretched there as aforesaid and in doing so was severely injured thereby. Whereupon she sued.

There was a demurrer to the declaration which upon hearing was sustained upon the first six grounds. Plaintiff in error refused to plead further and a judgment was thereupon entered for the defendant.

It is not necessary to state in this opinion the grounds of the demurrer which were held decisive of the case because it is agreed by counsel that a single question is involved and presented by the pleadings. This question, as stated in the briefs, is whether the provisions of Section 59, Chapter 5363, Acts of 1903, the charter of the defendant city, is applicable to suits of this character. The portion of this statute which requires consideration is as follows: "No suit shall be maintained against the city for damages arising out of a failure to keep in proper condition any sidewalk, pavement, viaduct, bridge, street or other public place, unless it shall be made to appear that the damage alleged is attributable to the negligence of the city, and that written notice of such damage was, within thirty days after the receiving of the injury alleged, given to the city attorney with such reasonable specifications as to time and place and witnesses as would enable the city officials to investigate the matter."

The contention of plaintiff in error is that this case is controlled by the principles announced in the case of Bryan v. City of West Palm Beach, 75 Fla. 19; 77 South. Rep. 627. There the charter provision involved was as follows: "The City of West Palm Beach shall not be liable for personal injuries due to defective condition of its streets or for the misfeasance or nonfeasance of its officers or employees." And it was held that "the immunity from liability is for damages for personal injuries due to *defective condition* of the streets, and cannot be extended to obstructions placed in the streets by the city whereby persons rightfully using them are injured." But in this case the language of the charter is broader and more inclusive than the charter provision of the City of West Palm Beach. Here immunity or exemption

39—Vol. 78

is given against suits for damages "arising out of a *failure to keep in proper condition* any    *    *    * street or other public place."

A "failure to keep in proper condition" may be the result of a defective condition of the street itself or may be due to an obstruction upon the street. In other words, a duty of the city to keep in proper condition may be breached either by allowing the street itself to become in a defective condition or by allowing obstructions to be placed on and permitted to remain upon the street.

But, while the language giving immunity to the city is broader in this case than in the West Palm Beach case, it is also true that the immunity or exemption allowed does not apply to actions "where it shall be made to appear that the damage alleged is attributable to the negligence of the city." So that, this case is not within the immunity provision of the charter because it is alleged that the damage alleged to have been suffered was attributable to the negligence of the city.

It is contended that it is not alleged that "written notice of such damage was within thirty days after the receiving of the injury alleged given to the city attorney with such reasonable specifications as to time and place and witnesses as would enabel the city officials to investigate the matter," as required by the quoted charter provision. This charter provision, with regard to the notice required to be given before such suits as are described therein may be maintained against the city, is almost precisely the same as the charter provision of the City of Jacksonville which was before this court in the case of High v. City of Jacksonville, 51 Fla. 207. The concluding paragraph of the opinion in that case is in the following language: "Inasmuch as the declara-

tion in the instant case contains no allegation that the notice to the Mayor of the city was given as required by the Statute, we are of the opinion that no error was committed in sustaining the demurrer to the declaration and in entering final judgment for the city."

The judgment under review is in accord with this opinion. It gives effect to the charter provision under consideration and also gives full effect to the doctrine of the two cases that counsel for each party rely upon.

The result is that the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.