JAMES M. CRUMBLEY, *Plaintiff in Error*, vs. CITY OF JACKSONVILLE, a Municipal Corporation, *Defendant in Error*.

135 So. 885.

138 So. 486.

En Banc.

Opinion filed July 9, 1931.
Petition for rehearing granted July 29, 1931.

*Evan Evans,* attorney for plaintiff in error;

*Austin Miller, Gov Hutchinson, Emmet Safay* and *Harvey Mabry,* attorneys for defendant in error.

BROWN, J.—This was an action for personal injury to the plaintiff alleged to have been caused by a limb falling on the plaintiff as he passed under a tree along Stonewall Street in the City of Jacksonville. It was alleged that the limb was caused to fall on the plaintiff by reason of it having been cut by the defendant from the tree upon which it grew while the defendant was engaged in the business of trimming limbs from trees to make room for its electric light wires used by it in its business of furnishing electric power and lights.

Demurrer was sustained to the original declaration and plaintiff then filed a second amended third count and a fourth count to his declaration. To these counts defendant filed separate demurrers. These demurrers were sustained and plaintiff thereupon abandoned all other counts of his

declaration and refused to plead further. Final judgment was entered for the defendant.

The demurrer to the second amended third count of the declaration as grounds therefor alleged, in part:

"Said count shows upon its face that said alleged notice was not given in manner and form as required by law. Said Count affirmatively shows that said notice fails to describe the place where said injuries were alleged to have occurred.

"Said count affirmatively shows that said notice fails to give the names and addresses of the witnesses to said injury."

Granting for the sake of argument that the provision in the City charter requiring notice in cases of this kind is valid, it would appear from the allegations in plaintiff's amended third count that the City waived the defect in the notice. This count alleges that notice was given within thirty days and sets out the notice. The City contends that the notice was defective in that it did not sufficiently specify the place where the injury occurred nor did it give the names of any witnesses thereto. The notice says that the injury took place while the plaintiff was walking along the sidewalk between Park Street and Riverside Avenue, about 4 P. M. on February 14, 1927. It is argued in behalf of the City that the two streets mentioned run paralled for about a mile and that the place of the injury was not therefore alleged with any certainty. It is true also that the notice does not set forth the names of any of the witnesses. The attorney who gave the notice states therein that he did not know the names of any of the witnesses. However, the allegations of this count go on to show that neither the City Attorney nor the City Commission made any suggestions that they desired a more detailed statement of the claim, but that they proceeded to act thereon, and within 30 days after the happening of said injury they rejected said claim on the sole ground that the circumstances under which said injury occurred created no legal liability on the part

of the defendant to the plaintiff, and that thereby the defendant and its officers waived any objection to the form of the notice given it as aforesaid.

Even if this provision of the City Charter requiring notice be valid, and even though the City authorities may not have had the legal right to entirely waive the *giving* of notice, they yet had the power to waive a *mere defect* in the *form* of the notice. The object of this charter provision is to give the City authorities an opportunity to investigate the facts concerning a claim within a short time after the injury complained of occurs. While the form of the notice in this case did not fully comply with the requirements of the charter provision, it is plain from the allegations of this count that the notice had fulfilled its purpose, that the City Attorney and City Commission had investigated the matter and that they rejected the claim, not on account of any defect in the notice, but, because, under the circumstances under which the injury occurred, they reached the conclusion that no legal liability on the part of the City existed. All of this happened within the 30-day period, and amounted to a waiver of the alleged defects in the notice. When this notice was received, the City authorities might have denied the claim on account of the defect in the notice, or it might have waived the defect and proceeded to a determination of its liability. It accepted the latter alternative and then denied the claim on the sole ground that there was no legal ground of liability for the injury to plaintiff, and without objecting to the form of the notice. The defects in the notice were largely technical, the defendant suffered no harm by reason thereof, and the facts alleged show a waiver of such defects. There are some cases outside this jurisdiction upholding this doctrine of waiver as applied to a city in cases of this kind, but it seems to us to be so just and so well supported by generally recognized principles of law applicable to like situations that no citation of authorities is necessary to uphold it.

Furthermore, in arguing that the court erred in sustaining the demurrer to the 4th count, it is contended that this provision requiring notice within 30 days from the injury is unconstitutional as applied to cases brought for damages for injuries inflicted in the course of the operation by the City of its electric light and power business in its *corporate* or *proprietary* rather than in its *governmental* capacity. In Bryan v. City of West Palm Beach, 75 Fla., 19, 77 So., 627, it was said:

"Section 94, c. 6411, Acts of 1911, cited supra, seeks to give to the city immunity from liability for personal injuries caused by the omission to perform, or the improper performance of one of its municipal or private duties, as distinguished from its governmental, and if it is within the power of the Legislature to exempt cities from such liability—a question which we do not decide in this case—the courts should not so extend the privileges and immunities for liability for acts of omission as to include acts of commission which are not specified in the act."

See also Kaufman v. City of Tallahassee, 84 Fla., 634, 94 So. 697.

In Sebring v. Avant, 95 Fla. 960, 117 So. 383, it was held that a city engaged in generating and selling electricity comes within the operation of the hazardous occupations act and could not therefore plead assumption of risk. It is contended that when a city is engaged in the business of generating and selling electricity, its liability for torts committed in the operation of such business should be governed by general law applicable to all persons and corporations engaged in such a business, and that any special law granting it immunity from suit under circumstances which would afford no immunity to others engaged in the same business, would constitute class legislation, and that such a special act would be invalid under the provisions of those sections of our State and Federal constitutions which guarantee the equal protection of the laws.

See section 1 of fourteenth amendment to Federal Constitution and Sections 1, 4 and 12 of the Declaration of Rights in our State Constitution.

In State v. Jacksonville Terminal Company, 41 Fla. 363, 27 So. 221, in which the opinion was written by CHIEF JUSTICE TAYLOR, it was held that while the provisions of Sec. 1 of the 14th Amendment to the Constitution of the United States do not preclude legislation reasonably classifying persons and things, it does require the same means and method to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in similar circumstances.

It is further insisted that even if a *general act* requiring such notice of claim to be given within 30 days as a condition precedent to a right of recovery should be considered valid if it applied to all claims against all of the municipalities of the State, that a special act of this nature, applying only to one city, as in this case, could not be held valid, at least as to cases brought to recover for injuries received in the course of the operation by the city of the business of generating and selling electricity; that, indeed, the validity of such a general statute would be doubtful if it did not apply to *all* persons and corporations engaged in the same business, whether municipal, private corporations, or persons. Furthermore, that this provision of the city charter conflicts or comes dangerously near conflicting with that provision of Sec. 20, Art. 3, of our Constitution which prohibits the passage of any special or local law regulating the practice in courts of justice, except municipal courts. But we do not deem it necessary to decide these questions upon the record here. The amended third count shows that notice was given and the defect therein waived. True, the fourth count omits the allegation as to notice, but the courts will not declare statutes unconstitutional where the case can be fairly tried or decided without doing so.

The court is grounding its decision in this case upon the

proposition that the court below erred in sustaining the demurrer to plaintiff's amended third count, on the ground that such count shows that the defect in the notice had been waived by the City. This count is held to state a cause of action.

Reversed and Remanded.

WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., dissents.

BUFORD, C.J., (Dissenting) : This was an action for personal injury to the plaintiff alleged to have been caused by a limb falling on the plaintiff as he passed under a tree along Stonewall Street in the City of Jacksonville. It was alleged that the limb was caused to fall on the plaintiff by reason of it having been cut by the defendant from the tree upon which it grew while the defendant was engaged in the business of trimming limbs from trees to make room for its electric light wires used by it in its business of furnishing electric power and lights.

Demurrer was sustained to the original declaration and plaintiff then filed a second amended third count and a fourth count to his declaration. To these counts defendant filed separate demurrers. These demurrers were sustained and plaintiff thereupon abandoned all other counts to his declaration and refused to plead further. Final judgment was entered for the defendant.

The demurrer to the second amended third count of the declaration as grounds therefor alleged, in part:

"Said count shows upon its face that said alleged notice was not given in manner and form as required by law.

"Said count affirmatively shows that said notice fails to describe the place where said injuries were alleged to have occurred.

"Said count affirmatively shows that said notice fails to give the names and addresses of the witnesses to said injury."

The demurrer to the additional fourth count of the declaration, among other grounds, alleges:

"Said count states no cause of action."

"The allegations of said count fail to show that the defendant, City of Jacksonville, owed the plaintiff, James Crumbley, any duty in respect to his safety in the premises.

"Said count fails to allege that the relation of Master and servant existed between the plaintiff and the defendant.

"Said count fails to show that plaintiff was an agent of the defendant.

"Said count fails to show that plaintiff was an employee of the defendant.

"Said count fails to show that the plaintiff was the fellow servant of any agent or employee of the defendant."

It is contended that the provision of the City Charter of the City of Jacksonville, Sec. 1, chapter 11564 Acts of Special Session 1925, requiring in effect that no suit shall "be maintained against the City arising out of any other tortious action or action sounding in tort, unless it shall be made to appear that the damage alleged was attributable to the gross negligence of the City, and that written notice of such damage was, within thirty days after the receiving of the injury, given to the City Attorney with such reasonable specifications as to time and place and witnesses as would enable the City Officials to investigate the matter" is unconstitutional and, therefore, not binding and acts required thereunder are not necessary to be alleged as a condition precedent to the right of plaintiff to recover. Neither count of the declaration in this case alleged that the notice provided for in that portion of the Charter above referred to had been given.

In the case of High vs. City of Jacksonville, 51 Fla. 207, 40 Sou. 1032, this Court had a like provision of the Charter of the City of Jacksonville under consideration, the only material difference being that in the provision of the

Charter then in force the notice was required to be given to the Mayor instead of to the City Attorney. In that case this Court, through Mr. Justice Hocker, said:

"We can discover no reason why the legislature might not, as they have done in section 3 of chapter 4872, provide that 'No suit shall be maintained against the city for damages, etc. unless written notice of such damage was within thirty days after receiving the injury given to the Mayor, with such reasonable specifications as to time and place as would enable the city officials to investigate the same.' Such a notice to a city is required in many States and so far as we can discover has been held to be a reasonable requirement intended to protect cities against fraudulent and unjust demands. 2 Modern Law of Municipal Corporations (by Smith) sec. 1310, pp. 1365, 1366; 20 Am. & Eng. Ency. Law (2nd Ed.) 1234, and cases cited.

"Inasmuch as the declaration in the instant case contains no allegation that the notice to the Mayor of the City was given as required by the Statute, we are of opinion that no error was committed in sustaining the demurrer to the declaration and in entering final judgment for the City."

In Starlings vs. City of Tampa, 78 Fla. 606, 83 Sou. 625, in an opinion by Mr. Justice West, this Court sustained a like provision of the Charter of the City of Tampa.

The law as enunciated in these cases will be found to be generally recognized and followed in other jurisdictions.

The reason given by Mr. Justice Hocker in High vs. City of Jacksonville, supra, for sustaining the provision of the ordinance was that it appeared to be a reasonable requirement intended to protect cities against fraudulent and unjust demands. It may be added that such a provision is warranted because of the theory that cities in exercising proprietary rights, duties and functions may be assumed to exercise the same in connection with their governmental municipal functions for the benefit of the public within the municipality and that such a provision is needful to protect

the public treasury of the municipality against bogus claims and waste.

The question as to what business principles should be applied by municipalities in the exercise of their proprietary functions is not before us for consideration and, therefore, whether the electric power plant of the City of Jacksonville is operated in such a manner as to evince that its primary object is to serve the public of that municipality as a lighting and power plant or to show a financial profit in its operation need not be discussed.

On authority of the opinions and judgments in the cases above cited, the judgment should be affirmed.

---

### ON REHEARING.

BROWN, J.—On the original hearing in this case, (reported in 135 So. 885) the court held the amended 3rd count good as against a demurrer, and reversed and remanded the cause, without ruling upon the action of the court below in sustaining the demurrer of defendant in error to the 4th count of plaintiff's declaration. On petition for rehearing it is insisted that the question raised as to the legal sufficiency of said 4th count will arise upon the further prosecution of this case in the court below, and this court has been urgently requested to review the action of the court below in sustaining the demurrer to this count. The court decided to and did grant a rehearing for a consideration and review of this particular question.

The allegations as to negligence and injury contained in said 4th count are quite similar to those contained in the 3rd count, but in addition thereto the 4th count alleges that at the time of plaintiff's injury the defendant City was engaged in the business of generating and selling electricity to and for the public, and that plaintiff's injury was caused by the negligence of the defendant City occurring in the prosecution of the defendant's said electrical business. It is unnecessary to set out in detail the allegations in this re-

spect. The main question which has been argued by counsel for the respective parties as to the legal sufficiency of the 4th count is based on the fact that said count entirely omits to allege that any notice whatever had been given to the defendant City as required by a provision on that subject in the City charter. Counsel for the City of Jacksonville, defendant in error here, contends that this omission was fatal to the legal sufficiency of said count, whereas counsel for plaintiff in error insists that the allegation in said count that the City was engaged in generating and selling electricity, as hereinabove quoted, rendered it unnecessary for plaintiff in error to give such notice or allege it in his declaration, upon the ground that the provision of the City charter with reference to notice is either unconstitutional and void in any case, or that it is not constitutionally applicable to cases based upon negligence of the city in carrying on the business of generating and selling electricity. While this question was not ruled upon on the former hearing, the contentions of counsel for plaintiff in error were summarized in the opinion of the court, and we deem it unnecessary to repeat them here.

It is true that this court held in the case of the City of Sebring v. Avant, 95 Fla. 960, 117 So. 383, that the City in that case, being engaged in generating and selling electricity, came within the operation of the hazardous occupations act, 4971-4974, Rev. Gen. Stats., 7058-7061, Comp. Genl. Laws, and could not therefore interpose the plea of assumption of risk as a defense in a suit for damages for personal injuries inflicted upon an employee of the City. While this case is not brought by an employee, and hence the hazardous statute does not apply, it is argued that the decision cited recognizes the principle that when a city is engaged in one of the hazardous occupations mentioned in the general statute referred to, such city not only comes within the operation of said statute and its liabilities and defenses must be measured thereby, in cases within the

operation of such statute, but that in all cases based on negligence of a city in the course of the conduct by it of such a business, it is governed by general law and cannot set up any defense which any other corporation or person engaged in the same sort of business could not set up. We do not think the Sebring case affords a basis for this contention, especially in an action brought by one not an employee, and to whom the hazardous occupations act does not apply.

While the argument that when a city is engaged in the business of generating and selling electricity its liabilities for torts committed in the operation of such business should be governed in all respects by general law applicable to all persons and corporations engaged in such business, and that therefore a statutory requirement of notice as a condition precedent to suit against a city would constitute class legislation, is a very plausible argument, the fact remains that there are such vital differences and distinctions between municipal corporations and private corporations, or individuals, as to afford some reasonable basis for the legislature to make a different classification and rule with reference to many matters affecting cities and towns which do not apply to private corporations or private persons, without offending against those provisions of our State and Federal Constitutions which in effect forbid class legislation and which guarantee the equal protection of the laws. Thus, while a city may be engaged in the business of generating and selling electricity, it is not supposed to be so engaged primarily for profit but to secure to its citizens, at a fair and reasonable cost, the benefit of what has become a necessary public utility, and even though some incidental profits should result from such business, the funds thus produced are public funds of the city which can only be used by the city for legitimate municipal purposes, thus making it possible to reduce the amount of general taxation upon its citizens. Indeed there might be a serious question

about the constitutional right of a city to engage even in a public utility business for the primary purpose of amassing profits. However, that question is not presented here, and we need not discuss it. Furthermore, the legislature might reasonably deem it wise and necessary to throw certain safeguards around municipal corporations to protect them against unfounded or fraudulent claims, which safeguards might not be deemed necessary in order to afford protection to private corporations even when engaged in some one or more of similar activities. It might have been in the legislative mind that private corporations or individuals engaged in business for profit may be depended upon to take care of their own interests and make prompt and efficient investigation of all claims made or likely to be made against them. On the other hand, cities, with miles of streets and electric lines, etc., cannot keep them under watch all the time, and unless promptly notified of injuries received, or alleged to have been received, cities might frequently find themselves unable to ascertain the actual facts of bona fide claims, and seriously handicapped in defending against fraudulent claims. There are so many differences between public corporations on the one hand and private corporations and individuals on the other, and there being an express grant of broad powers to the legislature in section 8 of Art. VIII of the constitution with reference to municipal corporations, that we cannot see our way clear to hold that the legislature was making an arbitrary and unreasonable classification when it provided that, as a condition precedent to suit, a party must give reasonable notice to the City of the nature and character of his claim and the circumstances under which it arose, so that the public funds of the city might be protected by ample opportunities for its officials to make investigation of the facts while there was yet opportunity to make that investigation efficiently and effectively.

This identical question has already been settled by this court in the case of High v. The City of Jacksonville, 51

Fla. 207, 40 So. 1032. The charter provision involved in that decision has been changed in some details since that time, but it is still essentially the same, and the legal question presented then is the same as that presented now. That decision is very well summarized in the single headnote which reads as follows:

1. "Chapter 4872 of the Laws of 1899, is a special law, applicable to the City of Jacksonville, and the third section thereof, requiring written notice of claims for damages to be given the Mayor as a condition precedent for the maintenance of a suit for such damages, is not repealed by, or in conflict with, Chapter 4722 of the laws passed at the same session of the legislature; and in a declaration against the city for the recovery of such damages as are embraced in the former act, it is necessary to allege that the notice thereby required to be given was given, and a declaration lacking such allegation is demurrable."

In the body of the opinion it was said by the court, speaking through MR. JUSTICE HOCKER, that: "Such a notice to a city is required in many States and so far as we can discover has been held to be a reasonable requirement intended to protect cities against fraudulent and unjust demands."

The above case was cited with approval and followed in Stallings v. City of Tampa, 78 Fla. 606, 83 So. 625.

This question is treated in Sections 1612 and 1613 of Dillon on Municipal Corporation, vol. 4, 5th ed., in which Judge Dillon calls attention to the fact that the validity of such enactments has often been sustained, as to cases growing out of torts, on the ground that the liability of a municipality for tortious claims is statutory in its origin and the legislature may therefore attach such conditions to the right to recover from the municipality as it deems proper or expedient. He also says that such provisions are made "in furtherance of a public policy to prevent needless litigation, and to save unnecessary expense and cost, by

affording an opportunity amicably to adjust all claims against municipal corporations before suit is brought."

In McQuillin on Municipal Corporations, 2nd ed., Sec. 2888, it is said that such provisions in city charters are mandatory, a condition precedent to the right to sue, and are universally upheld as valid and constitutional." The word "universally" is not strictly accurate at this time, as counsel for plaintiff in error has cited a few modern cases to the contrary. Continuing, McQuillin, in the same section says:

"In a few instances the validity of these laws have been contested on the ground that the wrong complained of was done by the municipality in its private or commercial as distinguished from its corporate or governmental capacity, and consequently the municipality being liable in like manner as an individual or a private corporation would be, the requirement of notice is an unjust discrimination between the municipal and the private corporation and the individual. However, the decisions in the main make no reference to, or reject, this distinction, and are virtually unanimous in sustaining reasonable laws on this subject, the only differences being in their construction and application."

And in section 2892 in further discussing this subject, McQuillin says:

"Such requirements are enacted in furtherance of a public policy, and their object and purpose is to protect the municipality from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit."

It is urgently insisted by plaintiff in error that municipal corporations have so enlarged their sphere of activities of recent years as to make them in effect business corporations, thus rendering the basis for our former decisions now inapplicable. This drift of opinion has been recognized in certain respects by this court. Kaufman v. City of Tallahassee, 84 Fla. 634, 94 So. 697; City of West Palm Beach vs. Grimmett, 137 So. 385. However, the weight of authority up to this time on the particular question here presented

appears to be to the contrary and, in spite of the developments of recent years, there still remains many vital differences and distinctions between municipal and private corporations, and we are constrained to believe that there yet remains a reasonable basis for the classification involved in the present case, sufficiently cogent and reasonable as to put it beyond the proper power of this court to hold the same arbitrary and unconstitutional.

The principle that municipal corporations stand to some extent at least in a class to themselves is borne out by the former decisions of this court to the effect that special or local legislation as to cities and towns under section 8 of Art. VIII of the Constitution is not controlled by section 21 of Article III requiring publication of notice of intention to apply for the passage of local and special laws, and hence may be enacted without such notice. Also by the holding that valid local and special laws, relating to the powers and government of particular municipalities, will prevail, even though when in conflict with the general statutory law. The basis for classification involved in this case underlies many provisions of city charter acts and statutes dealing with municipalities intended to safeguard them against losses which would increase the taxpayers' burdens; such, for instance, as requirements that no contracts shall be let nor purchases made by a city (except for small amounts) without publication of notice and competitive bidding.

We therefore hold that the court below was without error in sustaining the demurrer to said 4th count of the declaration, and our former judgment reversing the cause only for the error of the trial court in sustaining the demurrer to the amended 3rd count is reaffirmed.

Judgment of reversal reaffirmed on rehearing.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.