THOMAS C. WILLIAMS v. CITY OF JACKSONVILLE.

160 So. 15.

Division A.

Opinion Filed March 7, 1935

*George B. Mehlman,* for Plaintiff in Error;

*Austin Miller* and *Gov Hutchinson,* for Defendant in Error.

BROWN, J.—It appears from the declaration filed by the plaintiff in error in the court below that the plaintiff in error was employed by the defendant in error, the City of Jacksonville, as a laborer, and that while working in a ditch in one of the streets of said city, he was ordered by the fore-

man supervising the job to fix a joint in a sewer line. While bent over, fixing said joint, it is alleged that a heavy piece of asphalt fell from the top of the embankment adjoining the ditch, striking the plaintiff upon the small of his back, permanently injuring him. The declaration alleged that the embankment was composed of heavy substances deposited on the edge of the ditch which were constantly in danger of falling in and upon those working in the ditch and that said embankment was left unprotected and unguarded, and that the defendant knew or by the exercise of ordinary care could have known that if any of the heavy objects lying on said embankment should fall down upon any person working in the ditch, it would cause great bodily injury. Preceding these allegations of fact there was an allegation in respect to the duty which the defendant owed to the plaintiff and that the defendant negligently and carelessly disregarded its said duty in that it failed to provide the plaintiff a reasonably safe place in which to work and suitable supervision of said work.

The defendant city interposed a demurrer to the declaration and the Court made an order sustaining the second and eleventh counts for the demurrer, and the defendant declining to amend his declaration, the court rendered a judgment in favor of the defendant city on said demurrer.

The second ground of the demurrer was that the declaration "is vague, indefinite and uncertain." Our view is that the court erred in sustaining this ground of the demurrer. Counsel for the city contend that they could not gather from the declaration whether the negligence alleged was that of failure to provide suitable supervision, or failure to provide plaintiff in error with a reasonably safe place in which to work. Negligence in both respects is alleged and the fact that allegations of concurrent acts of negligence which to-

gether produce the injurious result are contained in one count does not necessarily render the count bad on demurrer. In Seaboard Airline Ry. Co. v. Rentz, 60 Fla. 499, 54 So. 20, it was held that several acts of negligence alleged as a series of causes tending to the same point and terminating in death or injury to the plaintiff may be alleged in one count of the declaration, as affording one cause of action.

The eleventh ground of the demurrer, which was also sustained by the court, was that the declaration failed to allege that notice of the alleged injury was duly given to the City Attorney of the defendant city in the manner and form required by law.

Section 11, Chapter 11564, Acts of 1925 (being a provision of the Charter of the City of Jacksonville) reads as follows:

"No suit shall be maintained against the City for damages arising out of its failure to keep in proper condition any sidewalk, payment, viaduct, bridge, street, waterworks, electric light plant, municipal docks and terminals, or other public place; neither shall any suit be maintained against the city arising out of any other tortious action or action sounding in tort, unless it shall be made to appear that the damage alleged was attributable to the gross negligence of the city, and that written notice of such damage was, within thirty days after the receiving of the injury, given to the City Attorney with such reasonable specifications as to time and place and witnesses as would enable the city officials to investigate the matter; and no verdict shall in any suit be given for any amount exceeding compensation damages to the plaintiff directly attribual to such negligence on the part of the city and not caused by contributory negligence on the part of the plaintiff.

"It shall be the duty of the City Attorney, upon receiving any such notice, to at once investigate the matter and lay the facts supported by the evidence before the City Commission in a written report, and the City Commission shall have the right, and, upon the written request of the person injured, it shall be the duty of the City Commission to investigate the matter and it may, by resolution, make such reasonable settlement of any such damages as may be agreed upon between the City Commission and the City Attorney. All other claims against the city shall be settled in the same manner."

It is true, that the declaration did not allege that any notice whatever had been given to the city, but plaintiff in error contends that the Charter Provision above referred to does not apply to a case where a city employee is injured. It is contended that such statutory or charter provisions requiring notice to the city as a condition precedent to an action against the city sounding in tort is in derogation of common right and should have been strictly construed so far as concerned the necessity for such notice or presentation, citing 43 C. J. 1186.

It is admitted that this court has upheld the validity of this provision of the City Charter in several cases, but it is granted that those cases are not applicable here, because, in none of such cases was the action brought against the city by an employee. Among the cases referred to is the case of High v. City of Jacksonville, 51 Fla. 207, 40 So. 1032 and Crumbley v. City of Jacksonville, 102 Fla. 409, 135 So. 885, and the latter case on rehearing, 138 So. 486. In the case of High v. City of Jacksonville, supra, this Court, speaking through Mr. Justice HOCKER, said:

"Such a notice to a city is required in many states and so far as we can discover has been held to be a reasonable

requirement intended to protect cities against fraudulent and unjust demands."

In the case of Crumbley v. City of Jacksonville, *supra* (102 Fla. 421, 138 So. 488), this Court said:

"Furthermore, the Legislature might reasonably deem it wise and necessary to throw certain safeguards around municipal corporations to protect them against unfounded or fraudulent claims, which safeguards might not be deemed necessary in order to afford protection to private corporations even when engaged in some one or more of similar activities. It might have been in the legislative mind that private corporations or individuals engaged in business for profit may be depended upon to take care of their own interests and make prompt and efficient investigation of all claims made or likely to be made against them. On the other hand, cities, with miles of streets and electric lines, etc., cannot keep them under watch all the time, and, unless promptly notified of injuries received, or alleged to have been received, cities might frequently find themselves unable to ascertain the actual facts of *bona fide* claims, and seriously handicapped in defending against fraudulent claims. There are so many differences between public corporations on the one hand and private corporations and individuals on the other, and there being an express grant of broad powers to the Legislature in Section 8 of Art. VIII of the Constitution with reference to municipal corporations, that we cannot see our way clear to hold that the Legislature was making an arbitrary and unreasonable classification when it provided that, as a condition precedent to suit, a party must give a reasonable notice to the city of the nature and character of his claim and the circumstances under which it arose, so that the public funds of the city might be protected by ample opportunity for its officials to make in-

vestigation of the facts while there was yet opportunity to make that investigation efficiently and effectively."

Plaintiff in error argues that the statute could not have been intended to apply to a case where one of the city's employees is injured, because the city is then put on notice by the knowledge of the foreman and the city medical attendant; that in the case of an employee the city thus has immediate knowledge of the tortious injuries and is in a ready position to ascertain the facts and prepare the matter for trial or settlement. It will have been observed that the charter provision requires that the notice be given to the City Attorney and makes it his duty to at once investigate the matter and lay the facts before the city commission. Counsel for plaintiff in error contends that the City Attorney, in case of injury to an employee of the city, is in a position to have such notice by merely requiring the foreman and medical attendant of the city to submit reports to him personally on all injuries and accidents to city employees coming to their attention; also that the reason for requiring notice in such cases, to enable the municipality to protect itself against spurious and fraudulent claims, is absent, since a municipality must be presumed to have notice of an injury to its servant. To this argument counsel for the city replied that the notice provision of the charter is needed to protect the city, not only as against third persons, but also as against city employees, so as to safeguard the city against the fraudulent claims of employees who may suffer slight injuries and promptly recover therefrom and go back to work for the city, until, perhaps several months later, when upon being discharged, they revive the old injury and magnify it into a serious claim about which the city officials by that time neither know nor are able to discover the true facts for the city's protection. The city also

contends that the terms of the statutory provision and charter contain no exception in favor of employees.

The decisions are in conflict on the question here involved. See 43 C. J. 1191, where most of the cases discussed in the briefs for the opposing parties are cited, and from which it appears that the weight of authority is to the effect that the notice requirement applies to municipal employees as well as to members of the general public. In one of the cases cited by plaintiff in error, it was said that the reason for the giving of notice by an employee was absent, for it must be presumed that the city had notice of the injury to its servant, and that therefore, such cases, while within the letter of the statute, are clearly outside the spirit thereof. See also to like effect, Kelly v. City of Bairbault, 104 N. W. 231, a Minnesota case, which was followed in a later case by the same court, Pesek v. City of New Prague, 106 N. W. 305.

Among the cases holding to the contrary, cited by the defendant city, is the Illinois case of Condon v. City of Chicago, 249 Ill. 596, 95 N. E. 976, a case in which the facts were very similar to the facts in the case at bar. In that case it was contended that the application of the statute to actions brought by a servant for injuries received in his employment would render the section unconstitutional as class legislation. The Supreme Court of Illinois said:

"It is insisted that to extend the application of the statute to actions brought by a servant for injuries received in the employment of a master would render the section unconstitutional as being class legislation. It is said that a municipal corporation and its employees, in respect to the relation of master and servant, stand upon the same footing as a private corporation or an individual and its or his employees, and that a statute which discriminates between the

servant of a municipal corporation and a servant of a private corporation suing their respective employers for a similar injury, would deprive the plaintiff, upon whom the additional burden is imposed, of the equal protection of the law."

"The obligation of a municpal corporation to use care to furnish its servants a safe place in which, and safe appliances with which to work, is not different from that of the private employer. The liability of such corporations upon their contracts and their torts is the same as that of private corporations or individuals, and notice is no more necessary as a condition precedent to an action against a municipality than against an individual, unless required by a statute. The power of the Legislature, however, to require notice, has been generally recognized, and in many of the states a previous notice of presentation of the claim is essential to the maintenance of an action against a municipal corporation, either in all cases or in certain kinds of cases. In some jurisdictions, the statute requires as notice in actions *ex contractu* only; in some, it applies to all claims, whether in tort or contract; in others, it is limited to injuries arising from defective streets; in others, it includes personal injuries of all kinds; and in still others, all actions of tort. Barrett v. Mobile, 129 Ala. 179, 30 South. 36, 87 Am. St. Rep. 54; Kenyon v. Cedar Rapids, 124 Iowa, 195, 99 N. W. 692; Bancroft v. San Diego, 120 Cal. 432, 52 Pac. 712; Springer v. Detroit, 102 Mich. 300, 60 N. W. 688; Davidson v. Muskegon, 111 Mich. 454, 69 N. W. 670; Kelly v. Faribault, 95 Minn. 293, 104 N. W. 231; Nance v. Falls City, 16 Neb. 85, 20 N. W. 109; Lincoln v. Grant, 38 Neb. 369, 56 N. W. 995; Jones v. Albany, 151 N. Y. 223, 45 N. E. 557; Winter v. Niagara Falls, 190 N. Y. 198, 82 N. E. 1101, 123 Am. St. Rep. 540; Shields v. Druhan, 118 N. C. 450, 24 S. E. 794, 36 L. R. A. 293;

Youngsville v. Siggins, 110 Pa. 291, 1 Atl. 736; Giuricevis v. Tacoma, 57 Wash. 329, 106 Pac. 908, 28 L. R. A. (N. S.) 533; Stelz v. Wausau, 88 Wis. 618, 60 N. W. 1062; Hay v. Baraboo, 127 Wis. 1, 105 N. W. 654, 3 L. R. A. (N. S.) 84. 115 Am. St. Rep. 977. In the cases cited, statutes requiring such notices have been construed and applied. In none of them was the question of the constitutionality of the statutes in the respect now suggested considered or raised. Though such statutes have long been in force in many states, no case has come to our knowledge where the requirements of such notice has been held unconstitutional for the reason advanced here or has been questioned upon that ground."

"Municipal corporations are bodies politic, created for the purpose of administering the affairs of the incorporated territory. They exercise the powers of local government delegated to them by the Legislature, and are instruments of the state for that purpose. Their funds are derived from taxation, and their affairs are administered by officers elected for comparatively short terms and by the appointees of such officers. Their affairs cannot be conducted by the same rules which govern the business of a private corporation managed and conducted by its owners, with its own funds, under a continuous management. It is essential to the public interests, to economy and the protection of public funds, that rules should be established governing the transactions of such bodies different from those which apply to the affairs of individuals and corporations, and these different conditions from a sufficient basis for the legislation here brought in question. Our attention has been called to the cases of Kelly v. Fairbault, *supra,* and Giruicevic v Tacoma *supra,* as sustaining the contention of the plaintiff in error that the Act has no application to a suit by a servant

against the master for injuries received through the master's negligence. The statutes of Minnesota and Washington, which were the subject of consideration in those cases, referred to injuries occasioned by any defect in the streets, and the general words which followed were held to be limited to the subject matter of such injuries. We can find no such limitation in our statute, which extents to any action for damages on account of any personal injury."

To like effect is the holding of the Supreme Court of Kansas, in Davis v. City of El Dorado, 126 Kan. 153, 267 Pac. 7.

The identical question here presented has never been decided by this Court. The nearest we have come to a decision of this question was in the recent case of City of Gainesville v. Kirkland, 156 So. 601, but the facts of that case were exceptional and the general question here involved was not ruled upon. In that case, this Court, speaking through Mr. Justice WHITFIELD, said:

"The Act contains the following: 'Sec. 29. No suit shall be maintained against the city for damages arising out of any tort, unless written notice of such claim was, within ninety (90) days after the day of receiving the injury alleged, given to the City Commission with specifications as to time and place of the injury.'

"If the statute is constitutional, and as framed is applicable in actions for wrongful death under the hazardous occupations statute, where an employee is alleged to have been killed by reason of the negligence of the employer, a failure to give the specific notice under the statute is not an effective defense in this case since the city manager was present just after the casualty and was made fully aware of the nature and cause of the injury sustained by the decedent."

"In sustaining a demurrer to the first amended plea above quoted, the trial court said: 'In cases of this nature, where it is alleged that the death was caused by the negligence of the master while the servant was in the performance of his duty, a municipality is charged with notice of the wrongful injury or death of one of its servants.' "

The case just cited might more properly fall within the holding in Crumbley v. City of Jacksonville, *supra,* and in the case of Kibbe v. City of Miami, 103 Fla. 793, 138 So. 371, first of which cases held in effect that where a notice was in fact given, a defect in the form of the notice might not be fatal, and the second of which cases held that where the notice was filed with the City Manager instead of with the City Attorney, the City Attorney having for his own convenience directed that the notice be served on the City Manager, this departure from the statute would be deemed to have been waived.

Upon reading the charter provision of the City of Jacksonville hereinabove quoted, it will be noticed that it is both comprehensive and explicit. It provides that no suit shall be maintained against the city, sounding in tort, unless the prescribed notice shall have been given to the City attorney. In the face of such language, we do not consider that this Court would be authorized to read into the charter provision an exception in favor of city employees which was not placed there by the legislature. If it should be deemed that a wise public policy would make such an exception advisable, the Legislature can amend the statute so as to effectuate such policy. As was noted in the opinion in Crumbley v. City of Jacksonville, *supra,* Judge Dillon, in his work on Municipal Corporations (5th edition, Sections 1612-1613) called attention to the fact that the validity of such charter or statutory provisions as the one here

involved has often been sustained, as to cases growing out of torts, on the ground that the liability of a municipality for tortious claims is statutory in its origin, and that the Legislature may therefore attach such conditions precedent to the right to recover from the municipality, as regards this matter of notice of claim, as it deems proper or expedient.

In a large city, where the city activities are far flung, and its employees numerous, the Legislature might deem it necessary for the protection of the city that all persons, whether employed by the city or not, shall, within a reasonable time after the injury, give due presentation of notice of claim before bringing suit thereon. This is a question of legislative policy, and the language of the statute here involved indicates that such was the legislative policy which dictated its adoption by the Legislature as a part of the charter of the City of Jacksonville. Whether this policy is wise or fair as pertains to city employees, it is not for us to say, but until the Legislature sees fit to change the present statute, we must hold that it applies to all persons bringing tort actions against the city, including city employees.

In what has been said above, we have attached no importance to the use of the word "gross" preceding the word "negligence" in the statutory charter provision hereinabove quoted. It will be remembered that the charter provision provides that no suit shall be maintained against the city, sounding in tort, unless it shall be made to appear that the damage alleged was attributable to the "gross negligence" of the city, and also that written notice of such damage shall be given as therein provided. We have regarded the word "gross" as either eliminated from the statute, or as meaning nothing more than the word "negligence" itself would import. If the statute could be construed as holding

that the city can be held liable in cases based on either "gross" or simple negligence, but that the written notice prescribed therein is only required to be given in cases of "gross" negligence, then the notice requirement would not apply to this case, because it can hardly be said that the facts alleged in the declaration charge anything more than simple negligence, and therefore the plaintiff in the court below could have brought this suit without giving·the prescribed notice. But the statute cannot be so construed. It specifically provides that "neither shall any suit be maintained against the city arising out of any other tortious action or action sounding in tort, unless it shall be made to appear that the damage alleged was attributable to the *gross* negligence of the city, and that written notice of such damage was, within thirty days after the receiving of the injury, given to the City Attorney," etc. (Italics supplied.)

In the case of Bryan v. City of West Palm Beach, 75 Fla. 19, 77 So. 627, the question of whether or not it was within the power of the Legislature to exempt cities from liability for personal injuries caused by the omission to perform, or the improper performance, of any one of its municipal or private duties, as distinguished from its governmental duties, was adverted to, but was not decided. However, in the case of Kaufman v. City of Tallahassee, 84 Fla. 634, 94 So. 697, this Court, speaking through Mr. Justice ELLIS, said:

"The distinction between what is a governmental and what a ministerial function of a city is not always so clear that a given transaction may at once be classed as the one or the other, but whether governmental or not, it is always quite difficult, if not impossible, to give a satisfactory reason for holding a city immune from liability when through its own negligence or the carelessness or inefficiency of its

agents and employees it violates a right of a citizen to his injury, especially when one considers that provision of the bill of rights which declares that 'all courts in this state shall be open so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and rights and justice shall be administered without sale, denial or delay.'" Constitution, Bill of Rights, Section 4.

It will also be observed that in the quotation hereinabove made from Condon v. City of Chicago, a case cited by counsel for the City of Jacksonville, it was said that: "The obligation of a municipal corporation to use care to furnish its servants a safe place in which, and safe tools and appliances with which, to work, is not different from that of the private employer. The liability of such corporations upon their contracts and their torts is the same as that of private corporations or individuals," etc.

As indicated in the case of Kaufman v. City of Tallahassee, *supra,* to hold otherwise would be in conflict with Section 4 of our declaration of rights. The broad powers vested in the Legislature with regard to municipalities by Section 8 of Article VIII of the Constitution are not unlimited. We have frequently held that in exercising the powers thus conferred, the Legislature must not violate any other provision of the Constitution. State v. Johns, 92 Fla. 187, 109 So. 228, Brown v. Lakeland, 61 Fla. 508, 54 So. 716.

In the case of City of Sebring v. Avant, 95 Fla. 960, 117 So. 383, Mr. Justice TERRELL observed that the terms "gross," "ordinary" and "slight" negligence as known to the law and that when they are observed, gross negligence is said to be the want of slight care, and ordinary negligence is the want of ordinary care and slight negligence is

the want of great care; that while some of the municipalities of this state have charter provisions limiting their liability to gross negligence no such provision was in the charter of the city involved in that case, and therefore the court was not confronted with any such distinction. Nor was it necessary to decide this question in the case of City of Jacksonville v. Vaughn, 92 Fla. 339, 110 So. 529, wherein it was held that the court could determine from the facts alleged in the declaration whether or not gross negligence was alleged therein, and it was held in that case that the facts alleged in the declaration did show gross negligence on the part of the city as a matter of law, so that if it were necessary to aver gross negligence, it was done in that case. But there was no definite decision that it was essential for the declaration to make out a case of gross negligence in order to give the plaintiff the right to sue.

While there are some divergences and exceptions in the authorities, the weight of authority seems to be that a municipality, like a private corporation or a natural person, may be sued for tort; that the liabilities of a municipal corporation are an incident to and grow out of the powers and duties conferred or exacted; that it follows that if such corporation, in the exercise of any of its powers or the performance of any of its duties, incurs, *ex contractu* or *ex delicto,* any liability, whether it arises from express legislation or by implication, it cannot escape such liability unless relieved therefrom by some *valid* provision of law. McQuillen Municipal Corporations, Supplement, Volume 8, Section 2604, 2616, 2620. Many courts hold that a municipal corporation is exempt from liability for torts arising from performance of its strictly governmental functions. See Section 2623 of the same work and also 43 C. J. 921. It is not necessary for us to discuss this question here, if

indeed it has not already been settled to the contrary by our previous decision, following the Kaufman case, because it does not clearly appear from the facts in this case whether, in the course of the work which was being done, the city was acting in its governmental capacity or in its private or proprietary capacity.

There is another reason why we might disregard the adjective "gross" where it precedes the word "negligence" in the quoted charter provision. There is considerable authority for the view that a division of negligence into degrees serves no useful purpose, but, on the contrary, tends to confusion and uncertainty. In I Thompson on Negligence, Section 18, it is said: "Such refinements can have no useful place in the practical administration of justice. Negligence cannot be divided into three compartments by mathematical lines. Ordinary juries, before whom, except in cases in admiralty, actions grounded on negligence are always tried, are quite incapable of understanding such refinements." In ex parte Priester, 212 Ala. 271, 102 So. 376, it was said, that: "The word 'gross,' when used in connection with 'negligence,' implies nothing more than simple negligence;" that "gross negligence is nothing more than negligence with the addition of a vituperative epithet." In Laureisen v. American Bridge Company, 87 Minn. 518, 92 N. W. 475, it was said: "Such subtleties tend to obscure, rather than eliminate, the practical questions to be determined and are usually avoided by the courts of this country. See 45 C. J. 664-671.

It follows that the word "gross," preceding the word "negligence" in the charter provision here involved, may be regarded as eliminated, so that the provision may in other respects be held valid, and not in conflict with Section 4 of our Declaration of Rights. The Legislature will be deemed

to have intended to enact a valid and constitutional statute, and the statute will be thus construed when it can be so done without doing violence to the legislative intent.

It follows that the 11th ground of the demurrer was well taken and that the action of the lower court in sustaining the demurrer on that ground and in rendering judgment in favor of the defendant city, was free from error.

Affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL, and BUFORD, J. J., concur in the opinion and judgment.